AMBOC CORP., Landlord, *v.* BELL CAP Co., INC., Tenant, and " JOHN DOE ", Undertenant.

Municipal Court of the City of New York, Borough of Manhattan, October 3, 1955.

*McLaughlin & Fougner* for landlord.

*Taplitz & Taplitz* for tenant.

BOCCIA, J. This case appears to be of novel impression. The facts have been stipulated so that the only proposition submitted to the court for determination is the interpretation and construction of chapter 702 of the Laws of 1955, effective as of July 1, 1955, and commonly referred to as the Commercial Rent Law.

It appears that the tenant herein occupies commercial space on the fifth floor of a six-story building owned by the landlord at premises 560–562 Broadway, New York City. On March 1, 1943, the rent for these premises was $2,700 per year. On September 1, 1945, it was increased to $3,552.50 per year; and on February 1, 1948, it was increased to $4,500 per year, so that the total increases secured by this landlord predicated upon the 1943 base rent amount to 166⅔%.

By the instant proceeding the landlord seeks to increase the rent by raising the same to $5,175 per year, thus making the total increase 191⅔% of the base 1943 rent.

The landlord's contention is that the 1955 amendment which prescribed an equalization increase of 15% above the emergency rent in effect January 1, 1955, authorizes an increase, upon which the present application is based. The tenant, on the other hand, contends that as it has paid increases to the landlord since 1950 which are in excess of the 15% set forth in the statute, the landlord is not entitled to such increase and therefore the proceeding should be dismissed.

Coming then to an examination of the statute in question, we find that section 1 of the 1955 Law provides: "(e) ' Emergency rent.' (1) The rent reserved or payable under any lease, agreement or tenancy of commercial space in force on March first, nineteen hundred forty-three, plus fifteen per centum of such rent, except with respect to a tenant who, since January first, nineteen hundred forty-seven, has paid the emergency rent first established without an increase in excess of fifteen per centum thereof pursuant to any of the provisions of this act, and in any such case such emergency rent, plus fifteen per centum ",

The report of the Temporary Commission to Study Rents and Rental Conditions, issued March 31, 1955, in explanation of this

amendment (see N. Y. Legis. Doc., 1955, No. 73, p. 16), states as follows: "1. A 15% increase of rent would be permitted to be applied to the emergency rent of statutory tenants who have not paid any increase in rent since January 1st, 1950, or during the past five years. This change will affect relatively few such tenants and only those who did not pay a similar increase granted in 1953. It is clear from the language of the amendment submitted herewith that the amount of any such increase is to be applied in the same manner as the one authorized in 1953. (See Legis. Doc. [1953] No. 43, pp. 19–20.) It is intended that, if such a statutory tenant has not paid a rent increase by court order or agreement or arbitration, which increase is less than 15%, such tenant can be required to pay the difference between such lesser increase and 15%."

The tenant contends that since 1948 it has been paying the landlord $4,500 yearly, an increase over the rent provided in paragraph (1) of more than 44%, so that since 1950 it has been paying a sum in excess of the 15% as provided by the statute in question.

Far from being the applicable law to the facts at bar, the statute has been designated as " a perfect example of legislative ineptness in draftsmanship " (N. Y. L. J., July 6, 1955, p. 4, col. 13, Shaw).

The Real Estate Board of New York has likewise taken cognizance of the language used in this section and also finds that the language used by the Legislature is not very clear. (See 4 Real Estate Board Official Publication, No. 17.)

To this court's mind, it would have been a very simple matter if the Legislature had intended to bring about the result that the landlord contends, to have stated, in substance, that tenants of commercial property are required to pay a 15% increase following January 1, 1950. Instead, the Legislature saw fit to say: that " The rent fixed * * * with respect to any tenant who, since January first, nineteen hundred fifty has paid the emergency rent * * * without an increase in excess of fifteen per centum * * * shall be the rent so paid plus fifteen per centum ". (Par. [2].) Applying this language we thus find that the 15% increase provided in paragraph (2) is not applied to rent actually paid in 1950 but applies to " The rent fixed or established as provided in paragraph (1) ". Such a construction thus leads to a reasonable result. To this court's mind it does not appear that the statute was intended to compel tenants to pay an additional increase after voluntarily paying increased rentals. Under the landlord's theory, if the tenant

had paid a voluntary increase of 100% in 1949 he would have to pay an additional 15% increase based upon the total rental. This was certainly not the intent of the Legislature. In explanation of the 1955 amendment the report of the Temporary Commission to Study Rents and Rental Conditions stated that: " It is intended that, if such a statutory tenant has not paid a rent increase by court order or agreement or arbitration, which increase is less than 15%, such tenant can be required to pay the difference between such lesser increase and 15%."

Thus the language used can only have meaning if a limited increase were intended. The landlord's proposal would afford a broad increase that would affect a great many tenants. This does not appear to be in line with the construction placed upon the section in question as appears from the legislative reports where the committee stated " This change will affect relatively few such tenants and only those who did not pay a similar increase granted in 1953 ".

Accordingly it seems clear that the landlord in the instant proceeding is not entitled to increase the tenant's rent from 166⅔% to 191⅔% of the 1943 base rental and it follows that this proceeding should therefore be dismissed upon the merits.